**Louis L. MORENO, Appellant (Petitioner),**

v.

**STATE of Wyoming, DEPARTMENT OF REVENUE AND TAXATION, Appellee (Respondent).**

**No. 88–324.**

Supreme Court of Wyoming.

June 9, 1989.

Patricia Schick, Laramie, for appellant.

Peter J. Mulvaney, Deputy Atty. Gen., Shirley Kingston, Asst. Atty. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Petitioner Louis L. Moreno, a self-employed mechanic, challenges a district court affirmance of the proposed suspension of his driver's license by the State of Wyoming. He argues that W.S. 31–7–105(d) (Cum.Supp.1988), which denies an independent administrative hearing examiner the discretion to allow limited driving privileges to a person convicted of driving while under the influence (DWUI) twice in a five year period, creates an irrebuttable presumption of the person's unsafe driving behavior in violation of the federal and state constitutions.

We affirm.

Moreno was convicted of driving while under the influence (DWUI) in violation of W.S. 31–5–233 (Cum.Supp.1985) on June 25, 1985. On November 3, 1987, he was arrested and charged with DWUI in violation of W.S. 31–5–233 (Cum.Supp.1988). He later received notice of a ninety-day suspension of his license based on the results of a field chemical test under W.S. 31–6–102(e) (Cum.Supp.1988).

On January 5, 1988, Moreno pled guilty to his second DWUI violation and was convicted. In a January 29, 1988 letter, respondent the State of Wyoming Department of Revenue and Taxation (Department) notified him that under W.S. 31–7–105(d)(iii)(A) (Cum.Supp.1988), his driver's license would be suspended through November 30, 1988, because the January offense was Moreno's second conviction for DWUI within the same five-year period.

On February 23, 1988, the Department received a letter from Moreno requesting a hearing on the enhanced suspension of his license and arguing that he needed to drive to be able to work. Moreno received timely notice of a hearing and was granted a temporary driver's permit for March 3, 1988, to May 2, 1988. The hearing took place on April 5, 1988. The hearing officer concluded in his written order: "Wyoming

Law prohibits modification of a suspension based upon a second Driving While Under the Influence conviction within a five (5) year period." Moreno's driving privileges were then ordered suspended from May 3, 1988, through February 2, 1989.

Moreno challenged the constitutionality of the enhanced suspension provision in W.S. 31–7–105(d)(iii)(A) in a petition for judicial review in the district court filed April 29, 1988. On November 29, 1988, the district court affirmed the hearing officer's final order in all respects. This appeal from the district court's decision followed.

Moreno's issue focuses on that portion of W.S. 31–7–105(d), which provides in pertinent part:

* * * the [hearing examiner's] discretion to continue or modify any order of suspension so as to allow driving privileges is limited as follows:

\* \* \* \* \* \*

(iii) It may be extended to a person convicted under W.S. 31–5–233 or other law prohibiting driving while under the influence only if:

(A) Within the five (5) year period preceding the date of the most recent offense, the person has not been convicted under W.S. 31–5–233 or other law prohibiting driving under the influence * * *.

Moreno admits in his brief that he has received procedural due process. Cf. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94 (1971). He also admits the classification made by the state in treating second time DWUI offenders differently from other DWUI offenders is rationally related to a legitimate state purpose. Moreno further concedes that a Wyoming driver's license is a privilege and not a property right and recognizes this court's recent pronouncement that proceedings to suspend or revoke a driver's license are civil, not criminal, in nature. *Department*

*of Revenue and Taxation v. Hull,* 751 P.2d 351, 356 (Wyo.1988).

Having made these concessions, Moreno argues that the above quoted provision violates substantive due process by creating an "irrebuttable presumption" which deprives him of the ability to prove hardship and receive limited driving privileges after his second DWUI conviction within a five-year period. He contends that while this statute does not necessarily affect a property right, it does indirectly affect his "status" and the effect it has upon his status affects his ability to earn a living as a self-employed mechanic. Through this line of reasoning, he argues the state does not have a legitimate interest in denying all persons convicted of DWUI twice within a five-year period the right to limited driving privileges without allowing them a chance to prove individual need for them.

Moreno supports his arguments by relying on the reasoning of the United States Supreme Court in *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), where the Court struck down a state statute which mandatorily classified an applicant to a state funded university as nonresident for tuition purposes if the applicant listed an out-of-state address on the application form. Without discussing the nature or character of an applicant's alleged property entitlement to pay a certain level of tuition, and writing for a rather fractured plurality in which three justices specially concurred and three justices dissented, Justice Stewart held:

[I]t is forbidden by the Due Process Clause to deny an individual the resident [tuition] rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination.

*Vlandis,* 412 U.S. at 452, 93 S.Ct. at 2236, 37 L.Ed.2d at 71.[1]

---

**1.** The irrebuttable presumption rule of *Vlandis* was also applied in a per se fashion in the following cases: *Turner v. Department of Employment Security and Board of Review of Industrial Commission of Utah,* 423 U.S. 44, 46, 96 S.Ct. 249, 250, 46 L.Ed.2d 181, 183–84 (1975)

(striking down state unemployment compensation statute making pregnant women ineligible for unemployment benefits for period beginning twelve weeks before expected delivery date and six weeks after childbirth); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 644–48, 94

■ This court recognizes that the U.S. Const. amends. V and XIV and Wyo.Const. art. 1, § 6, contain procedural and substantive components. *Cheyenne Airport Board v. Rogers,* 707 P.2d 717, 727 (Wyo.), appeal dismissed, 476 U.S. 1110, 106 S.Ct. 1961, 90 L.Ed.2d 647 (1985). Federal substantive due process protections apply indirectly to the states through U.S. Const. amends. V and XIV, and state constitutional protections under Wyo.Const. art. 1, § 6, must guard the minimum due process rights guaranteed by the federal protections. Under the substantive component of those constitutional provisions the exercise of the state police power must promote a legitimate public objective with reasonable means. A due process infringement of an individual's nonfundamental life, liberty, or property entitlement occurs only when it amounts to an arbitrary deprivation of that entitlement. *Id.*

■ Having restated this court's substantive due process analysis under the federal and state constitutions, however, we do not feel obligated to adopt, in the way Moreno urges, the reasoning of *Vlandis* and several other cases listed in footnote 1, supra. To a certain extent, those holdings represent anomalies in substantive due process and equal protection analysis. A "per se" application of *Vlandis,* which does not consider the character of the alleged life, liberty, or property interest affected, the presence of a suspect class susceptible to invidious discrimination or an adverse impact on individual fundamental constitutional rights, might be interpreted to inject a strict judicial scrutiny standard of review into the substantive due process analysis every time a litigant can locate a conclusive statutory presumption. See *Vlandis,* 412 U.S. at 460–64, 93 S.Ct.

2240–42, 37 L.Ed.2d at 76–79 (Burger, C.J., dissenting, joined by Rehnquist, J.); and *Id.,* 412 U.S. at 464–70, 93 S.Ct. at 2242–45, 37 L.Ed.2d at 78–81 (Rehnquist, J., dissenting, joined by Burger, C.J. and Douglas, J.). That approach would wreak havoc with traditional due process and equal protection analyses which focus first on the asserted life, liberty, or property entitlement involved or an alleged invidious discrimination against a discrete minority, or infringement of a fundamental constitutional right.

Slightly more recent Court precedent applies *Vlandis* in terms of a traditional substantive due process and equal protection analysis, rather than recognizing it as a branch of substantive due process analysis in and of itself. See, e.g., *Usery v. Turner Elkhorn Mining Company,* 428 U.S. 1, 23–24, 96 S.Ct. 2882, 2896, 49 L.Ed.2d 752, 770–71 (1976) (upholding as constitutional a provision in Title IV of the Federal Coal Mine Health Safety Act of 1969 as amended in 1972, which provision makes irrebuttable presumption of total disability from pneumoconiosis once clinical evidence of miner's complicated pneumoconiosis is established); *Weinberger v. Salfi,* 422 U.S. 749, 768–74, 95 S.Ct. 2457, 2468–70, 45 L.Ed.2d 522, 540–43 (1975). In *Weinberger,* the Court addressed the constitutionality of a provision in the Social Security Act which denied a wage earner's widow or stepchild insurance benefits unless the widow or stepchild had been related to the wage earner for nine months before his death. *Weinberger,* 422 U.S. at 755–56, 95 S.Ct. at 2462, 45 L.Ed.2d at 533. The Court specifically reviewed the district court's decision that a per se application of *Vlandis* and the other cases explained in footnote 1, *supra,* required the Court to hold that the

S.Ct. 791, 798–99, 39 L.Ed.2d 52, 62–64 (1974) (striking down mandatory provision requiring pregnant school teacher to take unpaid maternity leave five months before expected childbirth, with leave request to be made at least two weeks before her departure); *United States Department of Agriculture v. Murry,* 413 U.S. 508, 515, 93 S.Ct. 2832, 2836, 37 L.Ed.2d 767, 774 (1973) (striking down provision of federal Food Stamp Act denying eligibility to households containing persons eighteen years old or older who had

been claimed as dependents for federal income tax purposes by taxpayers who were themselves ineligible for food stamp relief). The holdings in *Vlandis, Murry,* and *Cleveland,* relied on *Stanley v. Illinois,* 405 U.S. 645, 657–58, 92 S.Ct. 1208, 1216, 31 L.Ed.2d 551, 562 (1972), in which the Court struck down an Illinois statute creating the irrebuttable presumption that all unmarried fathers were unqualified to raise their children based on the fundamental character of a single father's parental right.

challenged provision violated substantive due process because it conclusively presumed that all widows and stepchildren who apply for wage earner insurance married the wage earner to obtain the insurance benefits. *Weinberger*, 422 U.S. at 768–69, 95 S.Ct. at 2468, 45 L.Ed.2d at 540. A six-person majority of the Court analyzed the holding of *Vlandis* and related case law, explaining that several of the holdings in those cases could be distinguished as involving obvious fundamental rights, which are reviewed under heightened judicial scrutiny. *Weinberger*, 422 U.S. at 771–72, 95 S.Ct. at 2469–70, 45 L.Ed.2d at 542 (explaining the holdings in *Cleveland Board of Education v. La-Fleur*, 414 U.S. 632, 644–48, 94 S.Ct. 791, 798–99, 39 L.Ed.2d 52, 62–64 (1974); and *Stanley v. Illinois*, 405 U.S. 645, 657–58, 92 S.Ct. 1208, 1216, 31 L.Ed.2d 551, 562 (1972)). Accord *Turner v. Department of Employment Security*, 423 U.S. 44, 46, 96 S.Ct. 249, 250, 46 L.Ed.2d 181, 183–84 (1975). The majority further distinguished the remaining cases Moreno relies on here as holdings in which the Court found the challenged statutes to lack a rational relation to a legitimate state objective. *Weinberger*, 422 U.S. at 772, 95 S.Ct. at 2470, 45 L.Ed.2d at 542–43 (explaining the holding in *United States Department of Agriculture v. Murry*, 413 U.S. 508, 515, 93 S.Ct. 2832, 2836, 37 L.Ed.2d 767, 774 (1973)). The Court then reproved a *per se* application of *Vlandis* and reviewed the challenged Social Security provision under traditional substantive due process analysis applicable to nonfundamental interests. Accord L. Tribe, American Constitutional Law, §§ 16–34 at 1622 (2d ed. 1988); J. Nowack, R. Rotunda, and J. Young, Constitutional Law, ch. 15, § II at 553–54 (2d ed. 1983).

This court has noted the irrebuttable presumption rule of *Vlandis* only twice when it was invoked to challenge the habitual criminal statute. See *Small v. State*, 689 P.2d 420, 429 (Wyo.1984), cert. denied, 469 U.S. 1224, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1985); and *Evans v. State*, 655 P.2d 1214, 1222 (Wyo.1982). In neither of those cases did we adopt a *per se* application of the rule that failed to analyze the character of the individual litigant's asserted right. Considering these opinions and our above discussion concerning the status of the irrebuttable presumption rule in present United States Supreme Court jurisprudence, we will not apply *Vlandis* and its progeny to this case in a way that might circumvent this court's established substantive due process or equal protection analysis. See *Weinberger*, 422 U.S. at 768–74, 95 S.Ct. at 2468–71, 45 L.Ed.2d at 540–44. A statute violates substantive due process when a litigant with standing shows that the challenged statute adversely affects a recognized life, liberty, or property entitlement and in doing so does not promote a legitimate state objective by reasonable means. Cf. *Griswold v. State of Connecticut*, 381 U.S. 479, 485–86, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510, 515–16 (1965); *Cheyenne Airport Board*, 707 P.2d at 727. State appellate courts writing to Moreno's fact situation have similarly declined to recognize a substantive due process violation. See *Heninger v. Charnes*, 200 Colo. 194, 613 P.2d 884, 888 (1980) (en banc), and other cases collected at Annotation, *Automobiles: Validity and Construction of Legislation Authorizing Revocation or Suspension of Operator's License for "Habitual," "Persistent," or "Frequent" Violations of Traffic Regulations*, 48 A.L. R.4th 367, § 6 at 411–15 (1986).

Moreno concedes he has no property right in his driver's license and that W.S. 31–7–105(d)(iii)(A) promotes a legitimate state objective by reasonable means. By doing so, he twice concedes the constitutionality of the statute he challenges.

The classification in W.S. 31–7–105(d)(iii)(A), which mandates that no second time DWUI offender can be eligible to receive a discretionary grant of limited driving privileges, is constitutional under the due process guarantees of both the U.S. Const. amends. V and XIV and Wyo. Const. art. 1, § 6.

Affirmed.