**Alan CHARNES, As Director of the Department of Revenue and Motor Vehicle Division, Department of Revenue, State of Colorado, Petitioner,**

v.

**James OLONA, Respondent.**

**No. 86SC103.**

Supreme Court of Colorado,
En Banc.

Sept. 14, 1987.

_____

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David R. Little, Asst. Atty. Gen., Denver, for petitioner.

No Appearance on behalf of respondent.

VOLLACK, Justice.

The Colorado Department of Revenue, Motor Vehicle Division [hereinafter DMV], appeals from the court of appeals' holding in the unpublished opinion *Olona v. Charnes*, No. 84CA1430 (Colo.App. Jan. 23, 1986) [hereinafter *Olona* ]. In *Olona*, the district court had reversed DMV's revocation of Olona's driver's license, and the court of appeals affirmed, based on its due process holding in *Kirke v. Motor Vehicle Division*, 724 P.2d 77 (Colo.App.1986) [hereinafter *Kirke* ]. We have reversed *Kirke*, 743 P.2d 16 (Colo.1987), and we reverse here.

I.

In December 1983, two police officers observed a motor vehicle being driven in an erratic fashion; the driver was unable to stay in a single lane and failed to observe a red signal light. The officers stopped the car and found that the driver was the respondent, James Olona [hereinafter Olona or licensee]. The officers noted that Olona had a strong odor of alcohol on his breath

**4.** § 42–2–122.1(2)(a), 17 C.R.S. (1984).

and conducted a roadside sobriety test. Olona failed the test and was apparently arrested by the first two officers,[1] who then requested assistance from a DUI officer. When the DUI officer arrived, the first two officers informed him of their observations of Olona's driving, and the time at which they had stopped Olona's vehicle. The DUI officer completed portions of the required paperwork at the scene as he was being advised by the arresting officers. The information he recorded at the scene included a description of the driving observed by the first two officers, and the time of the offense.

The DUI officer transported Olona to the Denver Police Department "DUI Room" for administration of a chemical test. Olona agreed to submit to a breath test. The test result revealed a blood alcohol concentration [hereinafter BAC] of 0.160. Pursuant to the "per se" statute, Olona received Notice of Revocation or Denial of his driver's license,[2] and he exercised his statutory right to a DMV hearing regarding the revocation.[3]

The DUI officer testified at the revocation hearing; the two officers who had initially stopped Olona were not present. The DUI officer testified that he arrived at the scene in response to a request for assistance with a DUI suspect. He testified that on his arrival, the officers advised him as to the driving they had observed which caused them to stop Olona's vehicle. They also advised the DUI officer that the time of the stop was 12:35 A.M. The DUI offi-cer testified that he entered this information, including the time of 12:35 A.M., in the required paperwork at the scene.

At the hearing, Olona objected to the hearsay testimony regarding (a) his driving, and (b) the time he was stopped by the first two officers. The hearing officer overruled the hearsay objection, entered a finding that the state had established by a preponderance of the evidence that Olona drove a motor vehicle while his BAC was 0.15 or more, and revoked his driver's license. The district court reversed the revocation, holding that Olona had been denied due process of law because the two officers who witnessed Olona's driving were not present at the revocation hearing to testify as to his driving and the time of the stop.[4] The court of appeals affirmed the reversal of the revocation order, based on its due process holding in *Kirke*, which we have reversed. 743 P.2d 16 (Colo.1987).

II.

A.

In *Kirke*, we held that a licensee is not denied due process when a hearing officer enters a finding of a revocation element in the absence of non-hearsay evidence as to that element, as long as (1) the hearsay evidence relied upon by the hearing officer is reasonably trustworthy and reliable, and (2) the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. *Kirke*, at 21. One factor contributing to

---

1. The testimony and evidence at the revocation hearing did not clearly establish which of the three officers actually performed the arrest. The record does show that the first two officers performed the roadside sobriety test, and that the DUI officer transported Olona to the DUI room. The DUI officer signed his name on the Case Summary as the "arresting officer," but he testified at the hearing that "I signed off all the documents that I had something to do with" and later stated: "I did not do the roadside. I did not arrest him. I only transported him." However, the question of which officer performed the arrest is not relevant to resolution of the issues presented on appeal.

2. The department shall revoke the license of any person upon its determination that the person:

(I) Drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or within one hour thereafter, as shown by chemical analysis of such person's blood or breath.

§ 42–2–122.1(1)(a)(I), 17 C.R.S. (1984).

3. § 42–2–122.1(7), 17 C.R.S. (1984).

4. The district court stated: "I'm concerned as to the quality of the evidence that was presented to the hearing officer in regard to, first, the driving of the vehicle and the time in which it occurred."

this conclusion is the licensee's statutory right to subpoena witnesses.[5] Other factors found to be relevant were that the law enforcement officer in *Kirke* was performing a required duty in his professional capacity, the lesser burden of proof applicable at a revocation hearing,[6] and the admissibility of hearsay evidence in administrative proceedings. *Kirke*, at 20–21. Because the same factors are present here, we reverse the court of appeals' decision.

Olona argues that at his revocation hearing, two elements were not established by a preponderance of the evidence: (1) whether he was driving, and (2) whether the chemical test was administered within one hour of the alleged driving. Hearsay testimony was presented as to the erratic driving observed by the first two officers which provided grounds for stopping Olona's vehicle. A statutorily required report[7] which set forth the grounds for stopping Olona and the time of the stop was also admitted into evidence. Part of this report was completed by the DUI officer at the scene while he was being advised of the pertinent information by the first officers.

The officers were acting in their professional capacity, and the DUI officer relied on statements made by fellow officers in completing the paperwork, and in concluding that reasonable grounds existed to stop Olona's vehicle. He could not have taken Olona into custody and transported him to the DUI room without relying on the first officers' statements. The hearsay testimony on the element of driving is substantially similar to the hearsay testimony presented in *Kirke*. For the reasons set forth in *Kirke*, at 21, we conclude that this evidence meets the test described above, and the hearing officer was justified in relying on hearsay alone to establish that Olona was driving a motor vehicle.

## B.

Hearsay testimony by the DUI officer also established the time of the traffic stop. The state must prove that the chemical test was administered within one hour of the alleged offense.[8] When defense counsel asked the DUI officer how he knew that Olona had been stopped at 12:35 A.M., the DUI officer responded:

As [sic] the time that it happened it was the time related by the officer who observered [sic] when he stopped him. . . . I put that down at the scene. . . . I filled the time—this line out at the scene. . . . [T]his is exactly the time that the incident happened. That was related to me by [the first two] Officers. . . .

The same factors of trustworthiness and reliability apply to this hearsay evidence. Again, the first two officers were advising a fellow officer at the scene, as part of routine law enforcement duties. The purpose in doing so was to enable the DUI officer to complete the necessary paperwork prior to his transporting the DUI suspect. Where, as here, the exchange of information is contemporaneous with the entry of that information in the necessary reports, we see no prejudice resulting to the licensee. One of the three officers had to record this information, and the officer who did so justifiably relied on the statements of fellow officers who had personally conducted the stop. The licensee could have subpoenaed either or both of the first two officers, but failed to do so. *See Kirke*, at 22.

Because revocation hearings are civil proceedings, and because Colorado's "per se" legislation is remedial in nature, *Cordo-*

---

5. "The presiding hearing officer shall have authority ... to issue subpoenas...." § 42–2–122.1(8), 17 C.R.S. (1984).

6. "The sole issue at the hearing shall be whether *by a preponderance of the evidence* the person drove a vehicle [with a BAC of 0.15 or more]." § 42–2–122.1(8), 17 C.R.S. (1984) (emphasis added).

7. § 42–2–122.1(2), 17 C.R.S. (1984).

8. Section 42–2–122.1(1)(a)(I) requires that the blood or breath test be performed "at the time of the commission of the alleged offense or within one hour thereafter." *See supra* note 2.

va v. Mansheim, 725 P.2d 1158, 1160 (Colo. App.1986), we conclude that Olona was not denied due process by the hearing officer's finding that the time of 12:35 A.M. was established by a preponderance of the evidence, even though the officers who made the initial stop were not present at the hearing.

We reverse and remand for reinstatement of the revocation order.