**STATE of Wyoming, DEPARTMENT OF REVENUE AND TAXATION, Appellant (Respondent),**

v.

**Michael Alan HULL, Appellee (Petitioner).**

No. 87–178.

Supreme Court of Wyoming.

March 2, 1988.

Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Mark Quiner, Asst. Atty. Gen., for appellant (respondent).

Norman E. Young of Hill, Young & Barton, Riverton, for appellee (petitioner).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

A motor vehicle driver, stopped by a police officer for observed erratic driving, refused to take a blood-alcohol test. Suspension under the Wyoming implied-consent law as confirmed by an administrative hearing based on the state department implied-consent form as evidence, was reversed on appeal to the district court as insufficiently justified by the form as hearsay evidence. We reverse for reinstatement of the suspension.

Appellant, State of Wyoming, Department of Revenue and Taxation, phrases the issues as whether the district court erred in:

1. "RULING THAT THE HEARING EXAMINER'S DECISION WAS BASED SOLELY UPON HEARSAY WHEN THIS ISSUE WAS FIRST PRESENTED BY APPELLEE ON APPEAL TO THE DISTRICT COURT;"

2. "FINDING THE HEARING EXAMINER'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE;"

3. "APPELLEE WAIVED HIS DUE PROCESS RIGHTS TO CONFRONTATION AND CROSS–EXAMINATION BY FAILING TO SUBPOENA THE ARRESTING OFFICER."

FACTS

In September 1986, at 2:30 a.m., appellee Michael Alan Hull, when driving home, was stopped for a suspected driving-while-under-the-influence violation. The police officer became suspicious, and effectuated the stop when appellee failed to start up immediately from a flashing red traffic light and demonstrated a somewhat erratic driving pattern ending in failure to yield to the officer's police car operating with its emergency lights on. Hull admitted he had been drinking that day, but contended that it was sometime earlier.[1] Evidence supporting suspension is solely derived from the Department of Revenue and Taxation's form used to report implied-consent violations to the department. The procedure followed by the department is to send a notice of suspension and temporary Wyoming driver's license form FSFR–6(4/86) to the licensee, which form advises of right to hearing, and further:

"If you want to have the Peace Officer at the hearing, YOU MUST specifically request the Officer be Subpoenaed and YOU will be liable for any expenses incurred because of the Subpoena. This request may be made at the time you request the hearing."

A hearing was requested in this case and was convened October 21, 1986, involving the hearing officer, Hull and his attorney, but without subpoena for the arresting officer. The hearing examiner accepted the completed state report in evidence without objection, and read its text to the attorney and license-suspended driver.

Modest conflict existed between the text of the report and the subsequent testimony of the driver about the swerving in his driving, but the principal conflict arose wherein the driver said that he started to take the first alcohol-influence test as a

---

1. Leaving Riverton at 2:30 a.m. to return home in the country, a driver could not have been in immediately prior attendance at a movie theatre or bingo parlor. Public places at that hour are somewhat restricted to bars with a 2:00 a.m. closing time, or restaurants, some of which also have bars. At that morning hour, police-officer heightened scrutiny might occur shortly after bar closing time.

heel-to-toe observation, and then refused to take other tests, as compared to the report which recited that four other tests, horizontal gaze nystagmus, one-leg stand, alphabet, and finger count, were given, all of which demonstrated insobriety.

Hull presented two defenses at the suspension hearing, those being insufficient evidence to establish probable cause, and that the City of Riverton ordinance under which Hull was charged did not incorporate the state statutory implied-consent law. Argument was presented to the court that this latter issue was pending before a district judge of that judicial district and that a decision would be forthcoming before the end of the year. As a consequence of the diligence of that argument and the absolute conflict between the statement and the testimony about the tests given, by stipulation and request of Hull the hearing was continued until January, 1987. A hearing officer specifically asked counsel for the driver: "Do I have your word that you would request a subpoena of the officer?" to which the response was given, "Oh yeah, yeah. We'll get him here." Further inquiry later substantiated that the attorney would get the police officer by subpoena to the continued January hearing date.

When the hearing was reconvened on January 20, 1987, the police officer was again not present, the explanation by driver's counsel for his absence being that he had "overlooked doing it." At this juncture, for the first time the argument was made that the report form alone was not sufficient to establish the burden of proof and persuasion required on the four issues necessary to be demonstrated to uphold the validity of the suspension upon refusal to take the implied-consent tests. Those criteria had at the first hearing been enunciated by the hearing examiner as (1) driving under the influence; (2) arrested; (3) advised to submit, or the consequence being suspension; and (4) refusal to take the test, all

of which are consistent with the scope of the revocation hearing provided by § 31-6-103(b), W.S.1977, 1987 Cum.Supp.

The only issue addressed in the second hearing was the factual basis of the contention of driving under the influence, focusing on the dispute between the report and Hull as to whether a number of tests were taken, or whether he simply discontinued the first test and refused to take any others.

■ The generic substantive question of this proceeding is whether the Department of Revenue and Taxation can impress the burden of subpoenaing the arresting officer on the driver, or whether the department in the first instance is obligated to undertake that burden by subpoenaing the arresting officer to be available to testify at each administrative hearing. The procedural problems portrayed are: first, the failure to object to the introduction of the evidence;[2] second, the assumption of responsibility by the driver to request the arresting officer's presence at the second hearing, an assumption which was not fulfilled; and third, that the record presented to this court on appeal does not include a written transcription of the hearing tape recordings as is required by our case of recent vintage of *Lindsey v. State*, Wyo., 725 P.2d 649 (1986).

■ We are going to surmount the disaffinity of all of these procedural imbroglios in the interest of judicial economy and the immediate operation of the implied-consent process within the Wyoming Department of Revenue and Taxation by addressing the principal issue: whether the use of this implied-consent report form alone is sufficient to support a license suspension.

The parameters of this question involve two aspects: admissibility of this document, and due-process considerations.

---

**2.** Since Hull never objected to the report initially read into evidence, this court would not need to reach the more substantive issue. Failure to make a contemporaneous objection or raise the issue at trial amounts to a waiver of the issue on appeal. *United States v. Kragness*, 830 F.2d 842 (8th Cir.1987). For an article on the nuts and bolts of how to prepare for an implied-consent hearing, see Hanewich, *How to Handle Implied Consent Hearings*, Vol. 1 No. 3 DWI Journal: Law & Science 17 (1986).

This implied consent form[3] required by § 31–6–102(g), W.S.1977, 1987 Cum.Supp. is a public record[4] and falls within Rule 803(8), W.R.E. as a hearsay exception:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

"(8) Public records and reports.— Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) *matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel,* or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness; \* \* \*." (Emphasis added.)

Further, the legislature has provided that the form shall be treated like any other

**3.** The implied consent form provides:

"STATE OF WYO- )   Agency _____
MING
         ) ss.   Citation No. ____
COUNTY OF _____ )

"SWORN STATEMENT

"I, _____, a peace officer in the State of Wyoming do solemnly swear, That on _____, I had probable cause to believe ___-

| [Name] | [Drivers license #] |
| [DOB] | [SSN if available] |
| | [present address] |
| [City] | [State] | [Zip] |

hereinafter called Driver, had been driving or was in actual physical control of a motor vehicle upon a public street or highway while under the influence of alcohol or a controlled substance to a degree which rendered him incapable of safely driving such vehicle, for the following reasons:

"INITIAL CONTACT:

"DRIVER'S PHYSICAL CHARACTERISTICS: (Describe)
Odor of Alcohol _____
Speech _____
Balance _____
Signs of Complaints of Injury _____

"PRE–ARREST STATEMENTS:

"FIELD SOBRIETY TESTS: (Describe test, and driver's performance)
1.
2.
3.

"DID DRIVER TAKE MORE THAN ONE (1) CHEMICAL TEST? _____
If yes, why?

"ADDITIONAL INFORMATION:

"that the Driver was arrested for an offense as defined by Wyoming Statute 31–5–233.
"That I advised the Driver that his failure to submit to all required chemical tests requested of

his blood, breath or urine for the purpose of determining the alcohol content of his blood shall result in the suspension for six (6) months of his Wyoming Driver's license and his privilege to operate a motor vehicle.

"That I advised the Driver if a test is taken and the results indicate he is under the influence of alcohol, he may be subject to criminal penalties and his Wyoming drivers license and his privilege to operate a motor vehicle shall be suspended for ninety (90) days.

"That I advised the Driver he may be taken to the nearest hospital or clinic and secure any or all required tests at his own expense or he could have the tests administered by a person at a place and in a manner prescribed by and at the expense of the agency employing me.

"(Check box indicating applicable paragraph below)

☐ That I requested the Driver to submit to the chemical tests prescribed by my agency or secure the tests at his own expense but he refused to do either.

☐ That the Driver did submit to the requested tests and the result indicated he was under the influence of alcohol by a blood alcohol content of _____%.

"I, _____, Badge # ____ am a duly authorized and sworn Peace Officer in the State of Wyoming. I hereby certify that this statement was prepared following the arrest of the named driver and during the normal course of my employment as a Peace Officer. I further certify that the information it contains is true and correct.

_____
Peace Officer's Signature"

Form FSFR–5(5/85).

**4.** The peace officer under § 31–6–102(d), W.S. 1977, 1987 Cum.Supp. is required to submit his signed statement to the department if a person under arrest refuses to submit to chemical test.

document executed under oath, by providing in § 31–6–102(g), W.S.1977, 1987 Cum. Supp.:

"(g) For the purposes of this section, the signed statement submitted by the peace officer shall be deemed a sworn statement and shall be subject to penalties for perjury."

We would answer the first inquiry by recognizing that § 31–6–102(g) provides a basis for admissibility and for our conclusion that the legislature intended that the statement could be used as dispositive evidence although subject to contest by other available evidence with weight to be given by the factfinder.

Additionally, the department's form provides places, as does the National Safety Council's Alcohol Influence Report Form, Erwin, Defense of Drunk Driving Cases: Criminal/Civil, § 7.09, (Figures 7–4, 7–4A), for the officer to list the specific reasons causing the officer to suspect the individual is under the influence. Thus, the department's form is not just a bare affidavit that some jurisdictions have struck down as too conclusory when the officer only swears in the form to have had "reasonable grounds" for stopping the vehicle and requesting the test. *Jaubert v. Department of Public Safety*, La.App., 323 So.2d 212 (1975).

The second aspect of the form is a due-process inquiry of a right to cross-examination and a right of confrontation as guaranteed by the United States and Wyoming Constitutions. This second issue has been currently addressed by other jurisdictions which have found, as we now agree, that the right can be derived by the availability of the police officer, provided that the subpoena responsibility remains with the driver. Hull relies primarily on a Colorado Court of Appeals decision, *Kirke v. Colorado Department of Revenue, Motor Vehicle Division*, Colo.App., 724 P.2d 77 (1986), as the foundational basis of his constitutional attack. The court in Kirke held that the licensee's due-process rights were violated when only hearsay evidence was used to prove one of the elements in the revocation hearing. However, the Colorado Supreme Court reversed the Court of Appeals' due-process holding of Kirke. *Colorado Department of Revenue, Motor Vehicle Division v. Kirke*, Colo., 743 P.2d 16 (1987). Furthermore, the Colorado Supreme Court granted certiorari in four similar cases that relied on the due-process holding in Kirke, and reversed and remanded each of the four based on the Court of Appeals' erroneous due-process holding in Kirke. Clearly, Colorado has now adopted a view that hearsay evidence alone can be used to establish a revocation element because the licensee is not denied due process if the hearsay is sufficiently reliable and trustworthy, and "the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs." *Colorado Department of Revenue, Motor Vehicle Division v. Kirke*, supra, 743 P.2d at 21; *Colorado Division of Revenue v. Lounsbury*, Colo., 743 P.2d 23 (1987); *Charnes v. Lobato*, Colo., 743 P.2d 27 (1987); *Heller v. Velasquez*, Colo., 743 P.2d 34 (1987); *Charnes v. Olona*, Colo., 743 P.2d 36 (1987).

California recently has been faced with a situation nearly identical to the instant case in *Snelgrove v. Department of Motor Vehicles*, 194 Cal.App.3d 1364, 240 Cal.Rptr. 281, 282 (1987), where the court held that the arresting officer's sworn statement from a drunk-driving stop can supply sufficient proof, in an administrative hearing before the Department of Motor Vehicles, to suspend or revoke the motorist's license even if the officer does not personally testify and the motorist offers contrary proof.

The court in Snelgrove also was confronted with the issue of who must subpoena the officer. The issue in that case, as in the case at bar, became a question not necessarily of what process is due, but one of who has to pay for it. That court held that due-process concerns were satisfied if the licensee is offered the chance to subpoena the officer and fails to do so. *Id.* at 289. In concurrence with those carefully reasoned opinions, we would find that due process is available if the hearing officer affords the driver an opportunity to secure the attendance of the police officer, if he wishes, and that, if necessary, a continuance will be granted if impedance to the presence of the desired witness should otherwise occur in a fashion uncontrolled by action of the contesting driver.

Experienced trial counsel come to recognize that the best evidence that will ever be available in a general way as to what happened in an automobile accident or arrest situation is the immediately-inscribed motor vehicle report of the available officer. Assiduous cross-examination of its author as to the text of the report may generally only serve to solidify confirmation of the included facts for fact-finding emphasis. To the contrary, however, in the interest of the right to cross-examine and challenge, the opportunity should be afforded. Here the licensee was properly afforded that opportunity which he simply neglected to exercise. Thus, we will not reject a process authenticated by the statutory scheme and specifically provided for in the rules, regulations, and forms of the department, because of defense attorney decision or indecision. It will be the driver and not the State that will bear the responsibility of challenging the validity of the implied-consent suspension action through subpoenaing the officer to testify when the decision is made to challenge the veracity or validity of the filed form.

Hull off-handedly questions the standard of probable cause to be applied to the license revocation hearing in contending that the probable cause must be proven beyond a reasonable doubt to stop and request the test. Clearly, § 31–6–102(a)(i)(C), W.S.1977, 1987 Cum.Supp., requires the peace officer to have "probable cause" that the licensee was driving while under the influence. However, a license revocation hearing is civil in nature and the probable cause must only be proven by a preponderance of the evidence. *Price v. Reed*, Okla., 725 P.2d 1254, 1258 (1986); *State v. Nordness*, 128 Wis.2d 15, 381 N.W.2d 300, 308 (1986); 2 Nichols, Drinking/Driving Litigation: Criminal and Civil § 20.23.

"* * * An implied consent violation is purely administrative and separate from any traffic or criminal drinking/driving infraction even though the implied consent law and the law defining drinking/driving offenses may be contained in the same statute." 2 Nichols, Drinking/Driving Litigation: Criminal and Civil § 20.01, Ch. 20 at 3.

Thus it is not required to apply the standard of proof beyond a reasonable doubt to the officer's probable-cause decision as considered at the revocation hearing. The officer's probable cause must be derived from what he perceived at the scene of the stop from the totality of the circumstances constituting specific, articulable facts which supported the decision. With a defined responsibility for public safety, did the officer have cause for question and consequent reason for action? *State v. Nordness*, supra; Nicholls, supra, § 20.09.

"'The terms "reasonable grounds" and "probable cause" are substantially the equivalent, and probable cause is held to exist where the facts and circumstances within the officer's knowledge and of which he has *reasonably trustworthy information* are sufficient to cause a reasonably cautious police officer to believe that an offense has been committed.' *People v. Nanes*, 174 Colo. 294, 298–99, 483 P.2d 958, 961 (1971) (emphasis added). This probable cause approach has been adopted in the analysis of license revocation hearing issues, and requires case-by-case evaluation of the relevant facts and circumstances. *Zamora v. Department of Rev.*, 616 P.2d 1003 (Colo.App.1980)." *Colorado Department of Revenue, Motor Vehicle Division v. Kirke*, supra, 743 P.2d at 18. See also Annot., 88 A.L.R.2d 1064.

Little need be said further in this case to find substantial evidence and justification from the terms of the report and the detail of the statements of this driver to find an adequate factual basis to sustain the order of suspension and hold that the officer had reasonable grounds to stop the driver and request that he submit to the test. It is unquestioned that the police officer, early in the morning, saw the driver doing something which caused his inquiry and concern and caused him to stop the vehicle. It is furthermore not disputed that, at the least, upon alighting the driver started to take a test and then refused to take further tests for no stated reason, or, conversely, took and failed four tests. Unquestionably, upon being advised of the obligation under the implied-consent law, the driver refused to submit to a test.

The philosophic basis of implied-consent laws was to move the inquiry from the subjective opinions and the objective observations and conclusions of the arresting officer to a circumstance of more mathematical certainty by chemical-analysis determination. Society has moved far too specifically in this direction for this court now to question the philosophic parameter or the legislative prerequisites in addressing one of the most socially pervasive difficulties of contemporary society.[5]

We determine that the arresting officer form as prepared by the State of Wyoming is properly admissible as a public record and official document as an exception to the hearsay rule, pursuant to Rule 803(8), W.R.E., and that the right to confrontation and due process is protected and sustained provided that the accused driver is afforded an opportunity at his election and expense to subpoena the arresting officer for cross-examination. Snelgrove v. Department of Motor Vehicles, supra.

Reversed and remanded.

---

5. See Reese and Borgel, *Summary Suspension of Drunken Drivers' Licenses—A Preliminary Constitutional Inquiry*, 35 Admin.L.Rev. 313 (1983). For an analysis of Wyoming's 1985 amendments in this area, see Comment, *The New Implied Consent Amendments: A Step in the Right Direction*, XXI Land & Water L.Rev. 165 (1986).