2012 WY 146

**Todd L. ROMSA, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING DEPARTMENT OF TRANSPORTA-TION, Appellee (Respondent).**

**No. S–12–0005.**

Supreme Court of Wyoming.

Nov. 20, 2012.

Representing Appellant: R. Michael Vang of Fleener & Vang, LLC, Laramie, WY.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; and Michael T. Kahler, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN *, HILL, VOIGT, and BURKE, JJ.

\* *Justice Golden retired effective September 30, 2012.*

1. Wyo. Stat. Ann. § 31–6–105 (LexisNexis 2011) provides:

   **§ 31–6–105. Method of performing chemical analysis; persons permitted to draw blood; request by arrested person for test; information made available; evidence of refusal to take test.**

   (a) Chemical analysis of the person's blood, breath or urine to be considered valid under this section, shall be performed according to

HILL, Justice.

[¶1] After being arrested for driving while under the influence (DWUI) in violation of Wyo. Stat. Ann. § 31–5–233(b) (LexisNexis 2011), Todd L. Romsa submitted a request for contested case hearing before the Office of Administrative Hearings (OAH). Romsa asked the OAH to rule that the procedure used by the arresting officer to conduct the chemical breath test upon which his arrest was based did not comply with Wyo. Stat. Ann. § 31–6–105(a) (LexisNexis 2011) and, therefore, the proposed suspension of his driver's license must be vacated.[1] The OAH hearing examiner issued an Order Upholding *Per Se* Suspension on June 9, 2011. Romsa petitioned the district court to review the order of the OAH and on November 11, 2011, that court affirmed the OAH's order. Romsa now appeals the order of the district court. We affirm the order of the district court affirming the order of the hearing examiner that suspended the driver's license of Romsa.

## ISSUES

[¶2] Romsa presents two issues for our consideration:

I. It is improper for OAH to apply a presumption that the underlying chemical test result is valid where the certified record establishes a failure to comply with Wyoming Statute § 31–6–105(a).

II. If OAH is allowed to apply the presumption that a chemical test is valid, then [Romsa] should be allowed under Rule 12.08 of the Wyoming Rules of Appellate Procedure to provide evidence to rebut the arresting officer's claims that he complied with Wyoming Statute § 31–6–105(a),

methods approved by the department of health and by an individual possessing a valid permit to conduct the analysis. Permits shall be issued by the department of health for this purpose. The department of health may promulgate and approve satisfactory methods in order to ascertain the qualifications of individuals permitted to conduct the analysis and shall issue to qualified individuals permits which are subject to termination or revocation by the department of health.

where this evidence was not available to [Romsa] at the time of his *implied consent* administrative proceeding.

## FACTS

[¶ 3] On April 10, 2011 Romsa was arrested for DWUI in violation of § 31–5–233(b).[2] According to the Wyoming Highway Patrol officer (arresting officer), Romsa was observed driving approximately 80 mph in a 55 mph zone; he failed to acknowledge the pursuing officer for one quarter of a mile despite the fact that the officer had activated his overhead lights, and he otherwise engaged in indecisive driving according to the officer's experience and training. After Romsa pulled over in his vehicle and stopped on the side of Interstate 80, the officer approached the vehicle and as Romsa rolled down his window, the officer smelled a strong odor of an alcoholic beverage emanating from the vehicle. Romsa admitted that he had been drinking alcohol that day and agreed to submit to field sobriety tests. According to the officer, "6 of 6 clues of impairment were easily observed in Mr. Romsa's eyes" during the "Horizontal Gaze Nystagmus" test; Romsa failed the walk and turn test as "7 out of 8 clues of impairment were easily observed;" and "Mr. Romsa exhibited 2 out of 4 clues of impairment" during the one leg stand test. Romsa also agreed to blow into the officer's portable breath test machine, which produced a result of .125.

[¶ 4] Consequently, the officer placed Romsa under arrest for DWUI at approximately 1634 hours (4:34 p.m.) and he was taken to the Albany County Detention Center for a breath test to determine his blood alcohol content.

[¶ 5] Pursuant to the arresting officer's Incident Report, once at the detention cen-

ter, Romsa was read the Wyoming Implied Consent Form at 1725 hours (5:25 p.m.) and Romsa agreed to submit to a chemical test of his breath. The Wyoming Chemical Testing Program Intoximeter OR/IR II With Dry Gas—Operational Checklist (hereinafter "Operational Checklist") prepared by the arresting officer indicates that at 1729 hours (5:29 p.m.) it was discovered that Romsa had "chew" (chewing tobacco) in his mouth and he was required to "spit it out." At 1729 hours, the officer then began a mandatory fifteen-minute observation period, which is required by Department of Health (DOH) Wyoming Chemical Testing Program rules and regulations prior to chemical breath testing. DOH *Rules and Regulations for Chemical Analysis for Alcohol Testing*, Ch. III, § 1(a)(i) (2004).

[¶ 6] According to the Incident Report,

Mr. Romsa submitted to the first breath test (# 3438) at 1749 hours [5:49 p.m.] on 04/10/11. Mr. Romsa blew so hard into the machine that it caused an alcohol abort and a new test (# 3439) had to be run on the Intox. Machine.

On the next test (# 3439), Mr. Romsa provided another sample of his breath at 1755 hours [5:55 p.m.] and the result was a B.A.C. of .100. On the second attempt, Mr. Romsa failed to provide a sufficient air sample by blowing to [sic] lightly into the machine. On the third attempt, Mr. Romsa successfully provided a breath sample and the resulting B.A.C. was .108. Of note, I believe Mr. Romsa was trying to provide a sample of his breath in all of the above instances; he was simply confused as to how to properly provide a sample of his breath in the Intox. Machine.

---

**2.** Wyo. Stat. Ann. § 31–5–233(b) (LexisNexis 2011) provides:

§ **31–5–233. Driving or having control of vehicle while under influence of intoxicating liquor or controlled substances; penalties,** states in relevant part:

. . . .

(b) No person shall drive or have actual physical control of any vehicle within this state if the person:

(i) Has an alcohol concentration of eight one-hundredths of one percent (0.08%) or more;

(ii) Has an alcohol concentration of eight one-hundredths of one percent (0.08%) or more, as measured within two (2) hours after the time of driving or being in actual physical control of the vehicle following a lawful arrest resulting from a valid traffic stop; or

(iii) To a degree which renders him incapable of safely driving:

(A) Is under the influence of alcohol[.]

[¶ 7] By letter dated April, 20, 2011, Romsa was notified by the Wyoming Department of Transportation (WYDOT) that as a result of his April 10, 2011 arrest for DWUI, his driver's license would be suspended. Evidently having anticipated the driver's license suspension, Romsa submitted a written request for a contested case hearing on April 13, 2011, and the hearing request was referred to the OAH "pursuant to Wyo. Stat. Ann. § 31–7–105(b), the Wyoming Department of Transportation Rules and Regulations, *Driver's Licenses*, Ch. 1 (2009) and the Rules for Contested Case Practice and Procedure before the Office of Administrative Hearings (2008)," and the matter was deemed "appropriate for contested case hearing pursuant to the Wyoming Administrative Procedure Act, Wyo. Stat. Ann. §§ 16–3–101 through 115."

### Contested Administrative Hearing

[¶ 8] The contested administrative hearing was set for June 2, 2011. In addition to the date of the hearing, Romsa was notified in the Notice of Evidentiary Hearing filed on May 10, 2011 that he would be allowed to "introduce physical evidence at the hearing, including documents and/or video or audio tape recordings" as long as he provided the evidence to the OAH prior to the hearing.

[¶ 9] Also on May 10, 2011, an entry of appearance was filed with the OAH by an attorney representing Romsa, and the attorney was notified that the discovery file had already been sent to Romsa when WYDOT received his request for contested hearing.

[¶ 10] On May 16, 2011, Romsa filed a Request for Decision on the Pleadings and Motion to Vacate Proposed Suspension. Accordingly, Romsa asked that the "matter be decided on the pleadings and information contained in the *certified record* in this case." (Emphasis added.) Romsa *submitted no additional evidence and relied solely on the certified record.*

[¶ 11] The certified record was provided by WYDOT and contained, in relevant part:

1. The arresting officer's *Signed Statement,*

2. The *Incident Report* "about [the officer's] contact with, investigation, arrest and chemical testing of Romsa,"

3. The Wyoming Chemical Testing Program Intoximeter EC/IR–EC/IR II With Dry Gas Operational Checklist (*Operational Checklist* ),

4. A breath test record printout for test # 3438 "which reflected a test at 1749 [5:49 p.m.] and noted a Test Status: Mouth alcohol," (*Test # 3438* ), and

5. A breath test record printout for test # 3439 (*Test # 3439* ) reflecting Romsa's breath samples given at 1755 (5:55 p.m.) and 1759 (5:59 p.m.) with results of 0.100 and 0.108 BAC. [Emphasis added.]

[¶ 12] In his written argument, Romsa stated that: "The only issue in this case is whether the arresting officer observed the Licensee for the appropriate 15 minute observation period after the arresting officer received a mouth alcohol abort message for the Licensee's very first breath sample." Romsa argued:

In the current case, the Operational Checklist shows that [the arresting officer] started the 15 minute observation period at '1729 hrs discovered Mr. Romsa had chew in [his] mouth, had him spit it out.' Mr. Romsa's first reading was at '17:49' and the 'Test Status:' at bottom of the Subject Test shows an abort message of mouth alcohol.... [The arresting officer] immediately restarted the EC/IR up again and received two valid test results at '17:55' and '17:59' respectively. The first test was six (6) minutes after the mouth alcohol abort message and the second was ten (10) minutes after the mouth alcohol abort message. Because [the arresting officer] failed to wait the required 15 minutes after receiving the mouth alcohol abort message, the officer failed to comply with the rules and regulations for admission of the chemical test result and the proposed suspension must be vacated.

[¶ 13] Romsa relied upon the DOH *Rules and Regulations for Chemical Analysis for Alcohol Testing.* This rule provides:

*(i) Subject must be observed for a minimum of fifteen (15) minutes prior to testing to prevent residual mouth alco-*

*hol. All foreign material (except dentures) must be removed from the mouth at the start of observation period and subject must not be allowed to smoke, eat, drink, or place anything in their oral cavity, etc. If the subject vomits or regurgitates, the observation period must be restarted after rinsing the mouth with water. A dry burp or belch will not affect the test; therefore, the observation period time can continue.* [Emphasis added.]

*Id.,* Ch. III § 1(a)(i).

[¶ 14] After "consider[ing] the evidence and argument presented," the OAH determined that:

Chapter III § 1(a) Procedure for Analysis is the only place where reference is made to mouth alcohol and contains the same language in paragraph two of the Operational Checklist. This section requires a 15–minute observation period to prevent residual mouth alcohol. However, the section also provides a dry burp or belch will not affect the test and the observation can continue. *In this matter, no testimony was provided by Romsa and the only evidence is contained in the certified record.* The evidence from [the arresting officer] reflected [that] he started the observation period at 1729 hours, at 1749 hours Romsa 'blew so hard into the machine that it caused an alcohol abort ...', at 1755 Romsa provided the first breath sample on a new test and at 1759 Romsa provided the second usable breath sample. It appears, based on the evidence presented; blowing too hard into the machine is similar to a dry burp or belch which does not affect the observation period. *The evidence presented in the certified record established [that the arresting officer] observed the required 15–minute observation period prior to testing and the breath test is admissible.* Since Romsa's counsel stipulated to all the other issues and the certified record provided evidence establishing all the other issues, the proposed suspension action is upheld." [Emphasis added.]

### Appeal to the District Court

[¶ 15] On June 10, 2011, Romsa filed a Petition for Judicial Review with the Second Judicial district court. In his petition, Romsa set forth the issue on appeal as: "Was the Licensee's breath result valid under Wyoming Statute 31-6-105(a), where the breath result clearly showed a 'mouth alcohol' abort message, and the arresting officer failed to restart the 15 minute observation/deprivation period." [sic]

[¶ 16] Furthermore, identical to his written argument presented to the OAH in his petition to the district court, Romsa again argued that "[b]ecause [the arresting officer] failed to wait the required 15 minutes after receiving the mouth alcohol abort message, the officer failed to comply with the rules and regulations for admission of the chemical test result and the proposed suspension must be vacated." Romsa requested

[t]hat the Court find that as a matter of law under the rules created for admission of chemical tests pursuant to § 31–6–105(a), that this Court find that the 'mouth alcohol' abort message that was created in this case required the officer to restart the 15–minute observation period under the statutory predicate, and that his failure to do so requires that this Court find the test was not performed in compliance with Wyoming's implied consent law.

[¶ 17] In its Decision Letter dated October 27, 2011, the district court "having reviewed the [administrative] record and considered the briefs of the parties" found that,

[The arresting officer] had Mr. Romsa remove chewing tobacco from his mouth and began a fifteen-minute observation period at 1729 hours. The trooper did *not* observe Mr. Romsa with any 'foreign material' in his mouth, *nor* did Mr. Romsa vomit or regurgitate, during this time. Instead, the *only* evidence before the OAH was that the "mouth alcohol" error message occurred at 1749 hours because Mr. Romsa "blew so hard into the machine that it caused an alcohol abort[.]" Nothing in Wyoming law or regulations requires the start of a new observation period under these circumstances. *Compare People v. Ebert* [401 Ill.App.3d 958, 341 Ill.Dec. 671],

931 N.E.2d 279, 284 (Ill.App.Ct.2d Dist. 2010). Under the facts, as presented to the OAH and the record in this matter, Wyoming Department of Health Rules and Regulations and Wyoming law do *not* require a new fifteen-minute observation period after Mr. Romsa's first breath rest result aborted due to "mouth alcohol." [Emphasis in original.]

[¶ 18] Ultimately, the district court found "no error" on the part of the OAH and held that the "OAH's *Order Upholding Per Se Suspension* [was] **AFFIRMED** in all respects." (Emphasis added.)

## STANDARD OF REVIEW

[¶ 19] "When we consider an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision. Instead, 'we review the case as if it had come directly to us from the administrative agency.'" *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008) (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002)). The standard of review of administrative actions is governed by W.R.A.P. 12.09 and Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011), which provides in relevant part:

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> . . . .

> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

See *Wylie v. Wyoming DOT,* 970 P.2d 395, 397 (Wyo.1998).

[¶ 20] The "substantial evidence standard will be applied any time we review an *evidentiary ruling.*" *Dale,* ¶ 22, 188 P.3d 554 at 561 (emphasis added).

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to overwhelming weight of the evidence in the record as a whole. . . . Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale,* ¶ 22, 188 P.3d at 561.

[¶ 21] However, when we review an agency's *conclusions of law, such as questions regarding statutory interpretation,* we review the agency's conclusions *de novo. Dale,* ¶ 26, 188 P.3d at 561. See also *McClean v. State,* 2003 WY 17, 62 P.3d 595 (Wyo.2003). "Properly promulgated rules and regulations have the same force and effect of law. We construe them as we construe statutes." *Johnson v. City of Laramie,* 2008 WY 73, ¶ 7, 187 P.3d 355, 357 (Wyo. 2008).

> When construing statutes our primary consideration is to determine the legislature's intent. All statutes must be construed in *pari materia* and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony. Statutory construction is a question of law, so our standard of review is *de novo.* We endeavor to interpret statutes in accordance with the legislature's intent. *We begin by making an inquiry respecting the ordinary*

*and obvious meaning of the words employed according to their arrangement and connection.* We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia*. *When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to statutory construction.* We must not give a statute a meaning that will nullify its operation if it is susceptible to another interpretation. *Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.'* "

*Johnson,* ¶ 7, 187 P.3d at 357 (quoting *Muller v. Jackson Hole Mt. Resort,* 2006 WY 100, ¶ 9, 139 P.3d 1162, 1166 (Wyo.2006)) (emphasis added).

[¶ 22] Furthermore, in determining whether or not a statute (or administrative rule or regulation) is sufficiently clear and unambiguous, we look first to the plain language and ordinary meaning of the words. *McClean,* ¶ 6, 62 P.3d at 597.

A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. We have said that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

*McClean,* ¶ 6, 62 P.3d at 597–98 (internal citations omitted).

**3.** The "presumption" referenced by Romsa is contained in the Wyoming Office of Administrative Hearings *Rules for Contested Case Practice and Procedure Before the Office of Administrative Hearings, Special Rules Relating to Driver's Licenses,* Ch. VI § 2(c) (2002):

(c) [W]hen the Wyoming Department of Transportation presents evidence establishing

## DISCUSSION

[¶ 23] In his administrative hearing, Romsa stated the issue to be decided as, "whether the arresting officer observed the Licensee for the appropriate 15–minute observation period after the arresting officer received a mouth alcohol abort message for the Licensee's very first breath sample." In his petition to the district court Romsa set forth the issue on appeal as:

Was the Licensee's breath result valid under Wyoming Statute 31–6–105(a), where the breath result clearly showed a 'mouth alcohol' abort message, and the arresting officer failed to restart the 15–minute observation/deprivation period. [sic]

[¶ 24] In his appeal to this Court Romsa states the first of his two issues as: "It is improper for OAH to apply a presumption that the underlying chemical test result is valid where the certified record establishes a failure to comply with Wyoming Statute § 31–6–105(a)." [3]

[¶ 25] While Romsa has stated his "issue" differently in each of the three proceedings (i.e., the administrative proceeding, the district court appeal, and his appeal to this Court), and while in his argument to this Court he seems to mix factual issues with interpretation of law issues, it is clear to this Court that the issue on appeal is a question of law. Accordingly, "we review the agency's conclusions *de novo.*" *Dale,* ¶ 26, 188 P.3d at 561.

[¶ 26] In this case, the facts are undisputed. "In this matter, *no testimony was provided by Romsa and the only evidence is contained in the certified record.*" (Emphasis added.) It is undisputed that Romsa voluntarily submitted to a chemical breath test for alcohol. At 1729 (5:29 p.m.) the arresting officer discovered that Romsa had chewing tobacco in his mouth and had Romsa "spit it out" pursuant to DOH *Rules and*

that the chemical testing was conducted using methods approved under Wyo. Stat. Ann. § 31-6-105, it shall be presumed that the test result is accurate. This presumption may be rebutted by evidence establishing that the specific test result is inaccurate as a result of equipment malfunction or improper administration.

*Regulations for Chemical Analysis for Alcohol Testing*, Ch. III § 1(a)(i) requiring: "All foreign material ... be removed from the mouth at the start of observation period and subject must not be allowed to smoke, eat, drink, or place anything in their oral cavity, etc."

[¶ 27] It is undisputed that 20 minutes passed from the time that Romsa took the chewing tobacco out of his mouth to the time when he gave his first breath sample at 1749 (5:49 p.m.). Clearly, this timeframe comports with the language of the DOH rule requiring that the "[s]ubject must be observed for a minimum of fifteen (15) minutes prior to testing to prevent residual mouth alcohol." *Rules and Regulations for Chemical Analysis for Alcohol Testing*, Ch. III § 1(a)(i).

[¶ 28] Romsa does not dispute that he was observed for a minimum of 15 minutes prior to testing but, instead, takes issue with the fact that he was not asked to, nor did he, rinse his mouth with water after spitting out the "chew." Specifically, he argues that "the arresting officer failed to follow the guideline for rinsing contaminants out of a mouth prior to having someone provide a breath sample, which became evident when the breath machine subsequently provided a 'mouth alcohol' message."

[¶ 29] Apparently, Romsa is relying on the portion of the DOH rule that states: "If the subject vomits or regurgitates, the observation period must be restarted after rinsing the mouth with water." *Rules and Regulations for Chemical Analysis for Alcohol Testing*, Ch. III § 1(a)(i). However, Romsa is ignoring the first part of that sentence, i.e.: "If the subject vomits or regurgitates ..." Nowhere in the record has it been submitted that Romsa vomited or regurgitated at any time.

[¶ 30] Moreover, Romsa argues,

Given the fact that the officer received a mouth alcohol abort message after the arresting officer knew [that Romsa] had chewing tobacco in his mouth, it was incumbent on the officer to restart the 15–minute observation period prior to having [Romsa] take another chemical test. In this case, the officer did not wait 15 minutes to restart the machine and received two results after a mouth alcohol abort message .... Chewing tobacco is a mouth contaminant in the same manner as vomit and requires the rinsing of the mouth in order to remove the contaminating material. In this case, [Romsa] had chew in his mouth and he was not allowed to rinse it out, which explains why the machine gave a mouth alcohol reading shortly after [Romsa] attempted to provide a breath sample."

[¶ 31] While Romsa may be correct that "[c]hewing tobacco is a mouth contaminant in the same manner as vomit and requires the rinsing of the mouth in order to remove the contaminating material,"[4] (a conclusory statement that this Court takes no position on in this opinion) *Romsa provided no factual evidence of such in his administrative hearing.* Instead, the *only* evidence before the OAH as to the question of why the breath machine gave a mouth alcohol reading on Romsa's first breath sample was Romsa "blew so hard into the machine that it caused an alcohol abort[.]" And ultimately, the OAH found that "the evidence presented in the certified record established [the arresting officer] observed the required 15–minute observation period prior to testing and the breath test is admissible."

[¶ 32] We reiterate that the facts before the OAH in the contested administrative hearing were undisputed. The issue before the OAH, and now this Court, is a question of statutory interpretation. Specifically, we focus on the administrative rule relied upon by Romsa at the administrative hearing:

---

4. In his appeal, Romsa attached an article to his brief as "evidence" that was not a part of the record below. He argues that the attached article was "reprinted" as a chapter in a book that is "regarded as an authoritative book on the subject of chemical testing and forensic toxicology" and is evidence that chewing tobacco may contaminate breath alcohol results. However, because

we find that Romsa failed to apply to this Court for leave to present additional evidence pursuant to W.R.A.P. 12.08, and has failed to show good cause as to why he did not present the evidence in this contested case hearing (see discussion regarding Romsa's second issue on appeal), we will not consider this "additional evidence" on appeal.

DOH *Rules and Regulations for Chemical Analysis for Alcohol Testing,* Ch. III § 1(a)(i). In so doing,

> [w]e begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.... When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.... Moreover, we will not enlarge, stretch, expand or extend a statute to matters that do not fall within its express provisions.

*Johnson,* ¶ 7, 187 P.3d at 357.

[¶ 33] Romsa would have this Court disregard the "plain and ordinary meaning" of the language of DOH *Rules and Regulations for Chemical Analysis for Alcohol Testing,* Ch. 3 § 1(a)(i). The rule specifically requires rinsing of the mouth *only* if the licensee vomits or regurgitates. Romsa would have this Court "enlarge, stretch, expand or extend" the rule to require rinsing of the mouth after the licensee empties his mouth of chewing tobacco. *Johnson,* ¶ 7, 187 P.3d at 357. He would also have us expand the law to require a new 15–minute observation period any time the breath test results in a reading of "mouth alcohol."

[¶ 34] "We endeavor to interpret statutes in accordance with the legislature's intent." *Johnson,* ¶ 7, 187 P.3d at 357. We find that the language of the DOH *Rules and Regulations for Chemical Analysis for Alcohol Testing,* Ch. III § 1(a)(i), is clear and unambiguous. The DOH, by the authority granted to it by the legislature in § 31–6–105(a) clearly detailed under what circumstances a licensee should be required to rinse his mouth prior to testing and under what circumstances the 15–minute observation period must be restarted. Had the DOH intended to include those circumstances when the licensee was found to have chewing tobacco in his mouth and require rinsing of the mouth prior to testing, and/or those times when the breath test aborted due to "mouth alcohol" and require a re-start of the 15–minute observation period, it certainly could have done so. We, however, decline to substitute our judgment for that of the legislature and DOH in light of the unambiguous "ordinary and obvious meaning of the words employed according to their arrangement and connection." *Johnson,* ¶ 7, 187 P.3d at 357.

[¶ 35] Accordingly, we find, as did the district court, that "[u]nder the facts, as presented to the OAH and the record in this matter, Wyoming Department of Health Rules and Regulations and Wyoming law do *not* require a new fifteen-minute observation period after Mr. Romsa's first breath test result aborted due to 'mouth alcohol,' " and that the "OAH's *Order Upholding Per Se Suspension* is **AFFIRMED** in all respects." (Emphasis in original.)

[¶ 36] In order to more precisely address Romsa's first issue on appeal to this Court, and in light of our discussion, we find that the certified record presented by the WYDOT at the administrative hearing establishes that the arresting officer performed the chemical analysis of Romsa's breath according to the methods approved by the DOH (specifically, *Rules and Regulations for Chemical Analysis for Alcohol Testing,* Ch. III, § 1(a)(i)) and as a result, it was proper for the OAH to apply a presumption that the underlying chemical test result was valid. § 31–6–105(a).

[¶ 37] This brings us to *Romsa's second issue:*

> If the OAH is allowed to apply a presumption that a chemical test is valid, then [Romsa] should be allowed under Rule 12.08 of the Wyoming Rules of Appellate Procedure to provide evidence to rebut the arresting officer's claims that he complied with Wyoming Statute § 31–6–105(a), where this evidence was not available to [Romsa] at the time of his *implied consent* administrative hearing. [Emphasis in original.]

[¶ 38] The DOH *Rules for Contested Case Practice and Procedure Before the Office of Administrative Hearings, Special Rules Relating to Driver's Licenses,* Ch. VI § 2(c) (2002), states:

> (c) [W]hen the Wyoming Department of Transportation presents evidence establishing that the chemical testing was con-

ducted using methods approved under Wyo. Stat. Ann. § 31–6–105, it shall be presumed that the test result is accurate. This presumption may be rebutted by evidence establishing that the specific test result is inaccurate as a result of equipment malfunction or improper administration.

[¶ 39] Having found that the OAH, and subsequently the district court, did not err in finding that the WYDOT presented sufficient evidence in the certified record to establish during the administrative hearing "that the chemical testing [of Romsa] was conducted using methods approved under Wyo. Stat. Ann. § 31–6–105," we also find that the burden was properly shifted to Romsa to rebut the presumption that his breath test result was accurate. The presumption can be rebutted by showing "equipment malfunction or improper administration" of the test. *Special Rules Relating to Driver's Licenses*, Ch. VI § 2(c).

[¶ 40] Evidently, it is Romsa's position that the breath test result was inaccurate due to "improper administration." He argues that

[T]here is absolutely no science to support the arresting officer's claim that blowing too hard into a breath machine will cause a 'mouth alcohol' reading and the fact [that] chewing tobacco was observed and [Romsa] was not allowed to rinse it out, requires a finding that the breath test result was not valid.

Furthermore, Romsa argues that

There is nothing in the record to support the officer's assertion that blowing too hard into the breath machine can create a 'mouth alcohol' abort message," and that, instead, when "someone attempts to blow too hard into the breath machine," it will actually provide a 'Maximum flow exceeded' test result reading.

[¶ 41] However, the "evidence," that Romsa maintains supports his position that there was an "improper administration" of the breath test, was never presented to the OAH. Again, Romsa submitted no evidence and, instead, relied entirely upon the pleadings and certified record submitted by the WYDOT.

[¶ 42] Nevertheless, Romsa has attached to his appellate brief to this Court various records that he believes support his position, including a scientific article regarding chewing tobacco and its relation to "mouth alcohol," and various other documents obtained by Romsa's counsel "[a]s a result of discovery in another DWUI case," that purportedly show "that the EC/IR II breath machine has a specific message that the machine creates when someone blows too hard into the breath machine." Romsa argues that "[t]his message is 'Maximum flow exceeded,' " and "this new discovery should at least allow [Romsa] to have a remand under Rule 12.08 of the Wyoming Rules of Appellate Procedure[.]"

[¶ 43] W.R.A.P. 12.08 states, in relevant part, as follows:

**Rule 12.08. Presentation of Evidence.**

If, before the date set for hearing, application is made to the reviewing court for leave to present additional evidence, and it is shown to the satisfaction of the court the additional evidence is material, and good cause for failure to present it in the proceeding before the agency existed, the reviewing court, in contested cases, shall order the additional evidence to be taken before the agency upon those conditions determined by the reviewing court.

[¶ 44] At no time has Romsa applied to this Court for leave to present additional evidence as required by W.R.A.P. 12.08. Even if he had, however, Romsa has not shown "good cause for failure to present it in the proceeding before the agency." *Id.*

[¶ 45] Romsa insists that because the "scope of discovery available to a licensee in a Wyoming *implied consent* hearing" is limited, and he "was not entitled to the discovery of the EC/IR II machine [breath machine] for the implied consent hearing in the above-entitled matter and the information concerning the 'maximum flow exceeded' was provided to [Romsa's] counsel as discovery in another criminal case and *after* the hearing for the above-entitled matter," he "has set forth proof that would require a remand and

further proceedings before OAH[.]" (Emphasis in original.)

[¶ 46] As support for his position, Romsa references *Jones v. State ex rel. Wyo. DOT*, 991 P.2d 1251, 1253–54 (Wyo.1999) and Wyo. Stat. Ann. § 31-6-103(c). Section 31-6-103(c) provides for a contested case hearing before a license is suspended pursuant to our implied consent law and states:

> Prehearing discovery, available to any interested party is limited to access to the notice of suspension, signed statement and any accompanying documentation submitted by the arresting officer. Other types of discovery available under other law are not available in a hearing under this section.

Wyo. Stat. Ann. § 31-6-103(c) (LexisNexis 2011).

[¶ 47] However, even if Romsa was only afforded access to limited discovery, he discounts the fact that he had access to all of the documents contained in the certified record, including the Incident Report and the breath test record printout for test # 3438 "which reflected a test at 1749 [5:49 p.m.] and noted Test Status: Mouth alcohol," (Test # 3438). *At that time,* Romsa could have argued and submitted the scientific evidence that he now wants to submit, which purportedly supports his position that

> [c]hewing tobacco is a mouth contaminant in the same manner as vomit and requires the rinsing of the mouth in order to remove the contaminating material. In this case, [Romsa] had chew in his mouth and he was not allowed to rinse it out, which explains why the machine gave a mouth alcohol reading shortly after [Romsa] attempted to provide a breath sample.

He did not do so.

[¶ 48] Additionally, with regard to his argument that a "mouth alcohol" reading does not occur when someone blows too hard into the machine and that, rather, a "maximum flow exceeded" result would appear, Romsa certainly had the right to question the arresting officer regarding the "mouth alcohol" result, regardless of whether or not he was aware at the time of the hearing that a different reading could, or should, appear.

Indeed Romsa was aware of *Jones* since he uses it to support his position that discovery is limited. Yet, that case specifically states:

> A driver's constitutional rights to confront and cross-examine the arresting officer are satisfied by the driver's ability to subpoena the officer. *Dept. of Rev. & Taxation v. Hull,* 751 P.2d 351, 355 (Wyo. 1988). If the hearing officer affords the driver the opportunity to secure the attendance of the arresting officer, due process has been made available. *Id. The notice of suspension and temporary license form given to Wyoming drivers by the arresting officer advises the driver of his right to subpoena the officer,* stating "if you want the peace officer at the hearing, *you* must specifically request that the officer be subpoenaed and *you* will be liable for any expenses incurred because of the subpoena." *The only reason Jones was not able to confront and cross-examine the officer was his own failure to utilize his right to subpoena the officer to secure his attendance at the hearing.* He was not denied due process. [Emphasis added.]

*Jones*, 991 P.2d at 1254–55.

[¶ 49] Like *Jones,* the notice of suspension and temporary license form given to Romsa in this case and signed by him on April 10, 2011, expressly stated: "If you want the Peace Officer at the hearing, you must specifically request that the officer be subpoenaed[.]" However, Romsa waived his right to subpoena the arresting officer in this case when he requested that the case be determined on the pleadings and certified record alone. We agree with the WYDOT in this case that Romsa's

> failure to take advantage of the contested case hearing process does not equate to the 'good cause' contemplated in Wyoming Rule of Appellate Procedure 12.08. Accordingly, Romsa's failure to follow the rules of procedure and this Court's longstanding case law precludes considering that evidence on appeal.

[¶ 50] We hold that Romsa failed to meet the requirements set forth in W.R.A.P. 12.08. He has not applied to this Court for leave to present additional evidence, and he has not

shown "good cause for failure to present it in the proceeding before the agency." *Id.*

## CONCLUSION

[¶ 51] As stated in our discussion, we find that the certified record presented by the WYDOT at the administrative hearing establishes that the arresting officer performed the chemical analysis of Romsa's breath "according to the methods approved by the department of health," (specifically, *Rules and Regulations for Chemical Analysis for Alcohol Testing,* Ch. III, § 1(a)(i)), and as a result, it was proper for the OAH to apply a presumption that the underlying chemical test result was valid. § 31–6–105(a); *Special Rules Relating to Driver's Licenses,* Ch. VI § 2(c).

[¶ 52] Romsa did not present any evidence at the administrative hearing to rebut the presumption that the breath test results were accurate (*Special Rules Relating to Driver's Licenses,* Ch. VI, § 2(c)), and failed to meet the requirements of W.R.A.P. 12.08 that would allow this Court to "order the additional evidence to be taken before the agency." Consequently, we affirm the district court's Order Affirming *Per Se* Suspension and we affirm the Order Upholding *Per Se* Suspension by the Office of Administrative Hearings.